UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RAY BAGLEY, JR., <br><br>Petitioner, <br><br>v. <br><br>ROSEMARY NDOH, Warden, <br><br>Respondent. | No. 2:17-cv-2213 MCE DB P <br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, a state prisoner, proceeds pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered on October 30, 2015 in the Sutter County Superior Court. Petitioner stands convicted of assault with a deadly weapon for which he is serving an aggregate 10-year prison term. Petitioner claims the trial court's failure to instruct the jury on defense of property as an affirmative defense violated his rights under the Sixth and Fourteenth Amendments. For the reasons set forth below, it is recommended that the petition be denied.

## BACKGROUND

**I.     Trial Evidence**

The California Court of Appeal for the Third Appellate District provided the following summary of the evidence presented at trial:

////

1

**Kelly Hennigan's Testimony**[1]

Kelly Hennigan, the victim's on-and-off girlfriend, testified that she met defendant eight months prior through a friend. Defendant helped her with her car; regarding their relationship, they "kissed a couple times." On the evening of June 2, 2015, she and Leming were outside of Taco Bell and saw defendant. Defendant was riding a bicycle; he approached Leming and Hennigan, "saying 'The time has come,' something to that effect, 'I'm going to get mine.'" After this encounter, Leming and Hennigan walked approximately two blocks to the AM/PM.

At the AM/PM, Leming and Hennigan purchased beers and sat outside with their dog and a few other people. Hennigan testified that defendant suddenly appeared; she looked to her right and noticed defendant approximately 40 feet away, near the front entrance helping a woman clean up garbage from the garbage cans. Defendant began smirking and taunting them. He said to Leming, "'Come on, Wes. What you got? What you got? You want to show me something? You think you are somebody?'" Leming then responded, "'She is a woman, you know. What is your point?'" After a few minutes, defendant started patting his right pocket, walked back and forth, and continued taunting Leming by asking, "'What you got?'" Hennigan testified that at this point, she gave Leming a knife and said, "'It's coming, it's coming,'" letting Leming know that defendant was going to do something. She described the knife she gave Leming as a multi-tool knife, about an inch and a half long. Defendant came up to them and chest-butted Leming. Hennigan told them to stop.

About a minute or two later, defendant returned. Hennigan and Leming were standing on a ledge; defendant was standing about two feet below them. Defendant told Leming to "'[c]ome down here.'" Hennigan testified that defendant pulled a knife and began "to thrash it." She described defendant's knife as a "drywall blade." Leming then used the knife Hennigan had given him, and defendant and Leming began "thrash[ing] at one another." Defendant said he was "'going to go get the gun,'" and "disappeared."

Hennigan and Leming stayed at the AM/PM, and defendant returned just minutes later with a two-by-four board in his hand. Hennigan testified that defendant "[r]an up as fast as he could, as hard as he could, with full force, and swung back and hit [Leming] in the arm . . . he swung at his face, but [Leming] put his hand up to protect his face." Defendant used both hands to swing the board. She explained that the board had a nail in it, "[a]pproximately, eight to ten inches down," and that is the portion of the board that injured Leming. Hennigan testified that Leming, after being hit, began to lose his balance and stumbled into AM/PM. Defendant then came to the AM/PM door, looked at Leming, then "looked at the way out," then looked again at Leming, and again "looked at the way out like his

---

[1] The trial court found Kelly Hennigan to be unavailable as a witness. The transcript of her preliminary hearing testimony was read to the jury.

2

mind couldn't conceive whether to end it." Defendant left after a minute or two.

**Leming's Testimony**

Leming testified that he was familiar with defendant and saw him on a few occasions. "[The] [f]irst time he chased me with a two-by-four. The second time he chased me with a baseball bat. [The] [t]hird time I [saw] him at the Feed, he charged. The fourth time he got me." Leming explained that he did not report the prior incidents to the police because he does not have a good relationship with law enforcement.

Leming was at Taco Bell with Hennigan on June 2, 2015. Defendant rode by on his bike, but Leming did not remember if defendant said anything at that time. Leming and Hennigan then went to the AM/PM.

There were two other people at the AM/PM with Leming—Brad "Poet" Capell and Matt McClain. Leming noticed defendant helping a woman empty the trash. Leming walked around the back to the side of AM/PM where defendant was standing. Defendant told Leming, "'I'm going to get a gun, [Leming], I'm going to get a gun,'" to which Leming responded, "'Go ahead and get it. I've been shot before.'" Defendant ran behind the AM/PM.

Leming testified that defendant came back and again threatened that he was going to get a gun. Defendant then "took off again." Hannigan warned Leming that defendant carries a box cutter, so Leming asked Hannigan to hand him his knife from her purse.

Leming further testified that defendant came back again and Leming told him, "'You know what, I told you . . . you shouldn't be stalking people out here, especially my girlfriend.'" Defendant had his hands in his pocket. Defendant jumped up on the curb where Leming was standing and Leming swung his fist at him, but missed. Leming said the knife he had was in his fist when he swung it at defendant, but he denied that it was open. Defendant swung at Leming but Leming did not see a blade. Leming denied that they had swung knives at each other. Defendant jumped off the curb and went back around the back of the store.

Defendant came back; this time from the front of the store. Defendant had a two-by-four. Defendant approached Leming, but Leming believed defendant wanted to fight him, not hit him with the board. Leming further testified that they were moving towards each other when defendant lifted the board up like he was going to hit him. Leming explained that he put his arm up to protect himself and defendant hit him in the elbow with the two-by-four. Leming began to bleed and went into the store. He ultimately had surgery to implant four screws and a plate in his arm from the injury.

Leming testified that before the incident at the AM/PM that night, he split three beers with Hennigan and smoked marijuana that day, but he did not feel intoxicated at the time of the assault.

3

**Capell's Testimony**

Capell is a friend of Leming and Hennigan. Capell testified that he was present when Leming was injured. Capell had observed defendant being rude to Hennigan. Leming stood up to defend Hennigan and defendant "threatened" that he would leave and come back. Capell had the impression that Leming and defendant were fighting over Hennigan. Capell further testified that defendant returned, "riding on a little bike with the two-by-four in his hand." At this point, Leming got up and began to approach defendant on the bike. Defendant then hit Leming with the two-by-four. Capell testified that defendant was still on the bike when he hit Leming with the board. Leming had no weapon when he was hit with the two-by-four.

**Christopher Evers's Testimony**

Christopher Evers was a customer at the AM/PM on the night of the incident. Evers did not know defendant or Leming. Evers testified that he saw defendant outside the AM/PM "wielding a two-by-four in his hands . . . in a threatening manner." Evers said defendant appeared to be "pissed off." Defendant was on foot at the time. When Evers walked past defendant, he looked back and defendant was walking with a red mountain bike and the two-by-four. Defendant had grabbed the bike from the side of the store and then walked around the corner of the store. While Evers was inside the store, approximately four minutes passed and he heard a commotion outside. Leming came into the store bleeding, and Evers administered first aid. Evers saw defendant walking away with the bike and the two-by-four.

**Officer Mark Claar's Testimony**

On June 5, 2015, three days after the assault, Officer Mark Claar arrested and interviewed defendant. Defendant claimed he did not know Leming or Hennigan. Defendant claimed to have been at his sister's home on the night of the assault, arriving at 8:00 p.m. and leaving at 1:00 a.m. They played Scrabble and Monopoly while he was there.

**Gail Brooks's Testimony**

The prosecution called defendant's sister to testify. She testified defendant was not at her home on June 2, 2015. She said that whenever defendant visited, he never came inside.

**Defendant's Testimony**

Defendant testified that he went to the AM/PM and stopped to help a woman with garbage cans. He placed his bicycle against the building and left it there while he helped her. Defendant testified that he looked over and saw Leming, Hennigan, Capell, and McClain. Defendant further testified that the group was drinking next to his bicycle and he tried to think of a way to avoid them. Defendant then stepped up to the ledge where Leming was sitting. According to

4

defendant, Leming then pulled out a knife and swung the knife at him. Defendant went back around the front of the store.

Defendant said he was frustrated after the knife incident because he could not get to his bicycle. His bicycle was near Leming and he was not able to reach it. Defendant told the jury, "I don't really know what's going on in his head. I don't really know.... [¶] I know that he knows that's my bicycle that's sitting there. ... That he's stopping—preventing me from getting up there to get to my bicycle." Defendant testified, "I decided I wanted a weapon, and I felt like I needed a weapon to get to my property, to get my bike to get through this crowd." Defendant said he found a "tree stake" and he "smashed it down on the ground" to create a two-foot long "club." Defendant then approached Leming, Hennigan, Capell, and McClain with the two-by-four in hand. Defendant told the jury, "I'm walking towards them with the stick. Now, my only—my only intention was really just to let them know that I have something in my hand, you know what I mean? I'm trying to get what I'm going to get. I was not there to beat anybody up. I was—wasn't. I wasn't. It had nothing to do with any of that. [¶] So I'm just trying to get round these guys. And—and saw Wes Leming at this point[ ] starts walking towards me." Defendant explained, "I'm not saying anything to him. [¶] ... [¶] I'm just—I'm just trying to go get my bike. That's all there was to that." Defendant said Leming came out of his way to come in his direction. Defendant testified that Leming "pulls back with that knife, I pull back with the club." Defendant added, "I—only thing I—I feel like I can do is I'm going to swing that, and I'm going to hit him. And that's what I did." After hitting Leming, defendant got his bicycle, rode away, and threw the two-by-four in a dumpster.

On cross-examination, the prosecution asked defendant, "You had the right of self-defense, right?" Defendant replied, "I had the right for self-defense, but I do also have a right to go get my bike. [¶] Now, I don't think its law—against the law for me to have this in my hand. I didn't threaten anybody with it. I was just going towards my bike. *I had that just in case there was the problem* and—and the problem arose."

Regarding his bike, defendant's testimony was limited to his purported desire to retrieve it. He never testified that he was afraid it would be damaged or stolen by Leming or anybody else.

People v. Bagley, No. C080785, 2017 WL 527477, *1-4 (Cal. Ct. App. Feb. 9, 2017) (ECF No. 10-10 at 2-7).

## II. Procedural Background

### A. Trial and Judgment

Petitioner represented himself at trial. Bagley, 2017 WL 527477, at *1. A jury convicted him of assault with a deadly weapon and found true that he personally caused great bodily injury. Id. at 4. The court imposed an aggregate 10-year prison term. Id. at 5.

5

**B. Subsequent Proceedings**

Petitioner timely appealed his conviction, raising the ground he presents in this petition. The California Court of Appeal rejected his claim. (ECF No. 10-10.) Petitioner sought review in the California Supreme Court. (ECF No. 7.) The California Supreme Court summarily denied review. (ECF No. 11.)

The present petition was filed on October 23, 2017. (ECF No. 1.) Respondent filed an answer. (ECF No. 11.) Petitioner filed a traverse. (ECF No. 12.)

**STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th

Cir. 2010)). Circuit precedent may not, however, be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413).

Under 28 U.S.C. § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). A petitioner may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or may challenge the fact-finding process itself on the ground it was deficient in some material way. Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying

7

the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012). In order to find the state court's fact-finding process to be insufficient, a federal court must "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), then this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc). For claims upon which a petitioner seeks to present evidence, the petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

This court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). If it is clear a state court has not reached the merits of a petitioner's claim, then the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court reviews the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

////

**ANALYSIS**

Petitioner asserts a single ground for relief. He claims the trial court's failure to instruct, sua sponte, on defense of property as an affirmative defense violated his rights to a fair trial and to present a complete defense under the Sixth and Fourteenth Amendments. Petitioner contends the heart of his defense for the charged assault was the defense his bicycle, and thus that the trial court should have instructed the jury on defense of property. (ECF No. 1 at 39.)

In the last reasoned state court decision to address this claim, the California Court of Appeal rejected the claim on the merits, finding a lack of substantial evidence to support instruction on defense of property. The court reasoned:

> **[I. Claimed Instructional Error]**
>
> "A trial court must instruct the jury on every theory that is supported by substantial evidence, that is, evidence that would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof. We review the trial court's decision de novo." (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.) The trial court's duty to instruct sua sponte on a defense "'"only [arises] if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case."'" (*People v. Maury* (2003) 30 Cal.4th 342, 424.)
>
> Thus, we must determine whether there was substantial evidence supporting a defense of property instruction. [. . . .] [¶] Defense of property is codified in Civil Code section 50, which states: "Any necessary force may be used to protect from wrongful injury the person or property of oneself, or of a wife, husband, child, parent, or other relative, or member of one's family, or of a ward, servant, master, or guest."
>
> In pertinent part, CALCRIM No. 3476 reads: "The owner [or possessor] of (real/[or] personal) property may use reasonable force *to protect that property from imminent harm....* [¶] *Reasonable force* means the amount of force that a reasonable person in the same situation would believe is necessary to protect the property from imminent harm. [¶] When deciding whether the defendant used reasonable force, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If defendant's beliefs were reasonable, the danger does not need to have actually existed."
>
> As can be seen from Civil Code section 50 and CALCRIM No. 3476, defense of property requires that a defendant's use force be motivated by a reasonable belief in the need to protect his or her property from imminent harm. Here, there is not substantial evidence

9

to support a finding that defendant used force for the purpose of protecting his property. Nor was there evidence supporting a finding that there was an imminent threat to his property. At best, defendant's testimony supported a finding that he was attempting to protect himself while he walked to retrieve his bike from the place he purportedly left it. That is self-defense, not defense of property.

[. . . .] [¶] In the instant case, defendant did not provide testimony supporting a defense of property instruction; nor was there any other evidence supporting this instruction. At trial, the bicycle was mentioned in testimony about defendant riding by Taco Bell. It was mentioned again when Evers testified that he saw defendant, who appeared to be "pissed off," carrying a two-by-four and walking a red mountain bike he had retrieved from the side of the AM/PM. This occurred about four minutes before the commotion Evers heard outside which preceded Leming then stumbling into the store. Further, Capell testified that defendant approached the group on his bicycle with the two-by-four in his hands. In contrast to other witnesses' testimony, defendant testified that his bicycle was near Leming and he did not know what Leming was thinking. Because of this, he decided to arm himself with a two-by-four to get his bicycle. Yet, nobody ever said anything about the bike during any of the altercations between defendant and Leming, and defendant never testified that there was a threat of imminent harm to his bike or that he struck Leming to protect his bike. Nor does the other evidence support a finding of a threat of imminent harm to defendant's bike.

This case is similar to [*People v. Haagv* (1954)127 Cal. App.2d 93], where the defendant testified he was afraid of the victim prior to shooting, but did not testify he shot the victim to defend property. Here, defendant essentially claimed that he obtained a weapon to defend himself as he tried to pass by Leming to retrieve his bike from the location defendant had left it. Further, defendant ended his closing statement asking for the jury to find that he hit Leming in self-defense, *not* in trying to defend his property.

During his testimony, defendant told the jury, he had the two-by-four "*just in case there was the problem* and—and the problem arose." On appeal, defendant asserts "he wanted to get his bike while avoiding confrontation with Mr. Leming." Essentially, defendant's defense was that he had the right to protect himself from Leming while he tried to get to a location where his bike was purportedly located. This is not defense of property. The right to protect himself is self-defense, and the jury was properly instructed on that defense.

Substantial evidence does not support a defense of property instruction. Consequently, the trial court was not required to instruct sua sponte on this defense theory and there was no error.

**II. Harmless Error**

Even if the trial court erred in not giving the defense of property instruction sua sponte, the error was harmless. A "'misdirection of the jury, including . . . wrongly omitted instructions that do not amount to federal constitutional error are reviewed under the

10

harmless error standard articulated' in *Watson*." (*People v. Larsen* (2012) 205 Cal.App.4th 810, 830 [the *Watson* standard was the appropriate standard to determine whether the failure to give a mental disorder instruction to support a mental impairment defense was harmless error].) Under the *Watson* standard, "a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) Defendant on the other hand argues that we must measure the prejudicial effect of the purported error under the federal constitutional *Chapman* standard. A finding of a federal constitutional error requires reversal unless the People can prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. (*Chapman v. California* (1967) 386 U.S. 18, 23 [17 L.Ed.2d 705, 710] (*Chapman*).) We need not resolve this conflict, because any error is harmless under either standard. (See *People v. Clark* (2011) 201 Cal.App.4th 235, 251 [failure to instruct on self-defense as to a particular count was harmless under any standard].)

Here, there is overwhelming evidence that defendant was not trying to protect his bicycle from a threat of harm. Rather, as we have noted, defendant was simply trying to gain access to it. Defendant testified that Leming was in the way of him getting to his bicycle so he could leave, not that he was worried that Leming would damage or take his bicycle. Defendant claimed that Leming, Hennigan, Capell, and McClain were "next to [his] bike." However, he never testified that Leming had possession of his bike, touched his bike, or thought Leming was going to damage the bike. Defendant further testified that Leming had a knife and that is what led him to hit Leming with the two-by-four. Defendant was not worried about his bicycle when he hit Leming; he claimed he was worried that Leming would injure him. In closing, defendant stated that the law allows him to stand his ground and that "[he] can go get [his] bike, it doesn't matter what was thought. ... That's my bike over there . . ., that's mine." And as we have noted, he testified he armed himself "*just in case there was the problem* and—and the problem arose." The undisputed facts illustrate that defendant was not protecting his property; rather he claimed to have been protecting himself as he proceeded to the location where his property was situated.

Additionally, defendant's version of events is inconsistent with the testimony from multiple witnesses, including the AM/PM customer, Evers, who saw defendant walking the bike around the corner before the commotion that preceded Leming stumbling into the AM/PM. Other evidence demonstrates that defendant created the scenario that ended with him striking Leming with a two-by-four. In addition, defendant provided a false alibi twice. This evidenced a consciousness of guilt inconsistent with any justification defense.

Defendant points to remarks he made during closing about the bicycle. These remarks are, of course, not evidence. Consequently, the truth of the factual assertions made during his closing argument

11

> cannot be considered in our review for substantial evidence supporting the instruction or our harmless error analysis. Given the evidence, no jury could have found defendant was justified in using force against Leming based on the defense of property instruction defendant complains was not given to the jury. Consequently, any error was harmless beyond a reasonable doubt.
>
> Therefore, even if the trial court erred in failing to instruct sua sponte on the defense of property, any error was harmless under both the *Watson* and *Chapman* standards.

Bagley, 2017 WL 527477, at *5-8.

Jury instructions are generally issues of state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005). As such, a federal court is bound by a state appellate court's determination that a particular instruction was or was not warranted. See Id. ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); Williams v. Calderon, 52 F.3d 1465, 1480-81 (9th Cir. 1995). "Failure to give [a jury] instruction which might be proper as a matter of state law," by itself, does not merit federal habeas relief." Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005) (quoting Miller v. Stagner, 757 F.2d 988, 993 (9th Cir. 1985)).

Petitioner contends the trial court's failure to give a sua sponte instruction on defense of property violated his constitutional rights to due process and a fair trial. As set forth, only the holdings in the Supreme Court's decisions can identify "clearly established Federal law" to support habeas relief. See Atwood v. Ryan, 870 F.3d 1033, 1046 (9th Cir. 2017).

The Supreme Court has held a defendant in a criminal trial has a right guaranteed by the Sixth and Fourteenth Amendments to a meaningful opportunity to present a complete defense. See California v. Trombetta, 467 U.S. 479, 485 (1984) (finding the due process right to present a complete defense has been interpreted to guarantee a defendant's right of access to evidence). Petitioner asserts his right to instruction on his affirmative defense is a necessary corollary to a meaningful opportunity to present a defense.

"As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1998). Mathews was decided as a matter of federal

criminal procedure based on common law and the Federal Rules of Criminal Procedure, rather than on constitutional grounds. See Id. at 63-65. In addition, the instruction in Mathews was requested and denied. See Id. at 61-62. Thus, the case does not stand for the proposition that the Constitution requires a sua sponte instruction on an affirmative defense. See Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (holding that when a Supreme Court decision does not squarely address the issue in the case or establish a legal principle that clearly extends to a new context, then there is no clearly established applicable Supreme Court precedent under the AEDPA). Because Mathews was not decided on constitutional grounds and the omitted instruction was requested by the defense, the case does not clearly establish that petitioner had a constitutional right to sua sponte instruction on defense of property.

As such, "[t]he only question. . . is 'whether the [omission of the] instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (quoting Cupp v. Nauhten, 414 U.S. 141, 147 (1973)). Stated differently, petitioner's claim of instructional error is not cognizable unless the error, considered in context of all the instructions and the trial record as a whole, so infected the entire trial that the resulting conviction violates due process. Estelle, 502 U.S. at 71-72. The category of errors so fundamentally unfair as to violate due process is narrowly drawn. Id. at 72-73. In addition, on federal habeas review, no relief can be granted for instructional error without a showing the error had a "substantial and injurious effect or influence in determining the jury's verdict." Calderon v. Coleman, 525 U.S. 141, 147 (1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

In this case, the state court of appeal made findings of fact on direct review that are pertinent to the determination whether the alleged error rendered petitioner's trial and conviction fundamentally unfair. Specifically, the state court found there was no trial evidence that petitioner was afraid his bicycle would be stolen or damaged by Leming or anyone else. Bagley, 2017 WL 527477, at *4. The state court found petitioner's testimony about his bicycle "was limited to his purported desire to retrieve it" Id. This finding of fact is accorded a presumption of correctness that must be rebutted by clear and convincing evidence. See Hibbler, 693 F.3d at 1146.

////

Petitioner argues defense of his bicycle was the heart of his defense. (ECF No. 1 at 39-40 (citing RT 562-64).) Review of the trial evidence does not, however, show petitioner was clearly defending his property.

Had an instruction on defense of property been given, it would have instructed, in pertinent part: "[t]he owner [or possessor] of [personal] property may use reasonable force to protect that property from imminent harm." Judicial Council of California Criminal Jury Instruction ("CALCRIM") 3476; Bagley, 2017 WL 527477, at *4. And further, in pertinent part: "If defendant's beliefs were reasonable, the danger does not need to have actually existed." Id.

Petitioner testified Mr. Leming purposefully prevented him getting his bicycle. (ECF No. 10-5 at 271-74 (RT 556-60).) Petitioner tried to avoid Mr. Leming but Mr. Leming pulled out a knife and swung at petitioner. (Id. at 275 (RT 561).) Petitioner retrieved a weapon hoping that Mr. Leming would see and allow him to get his bicycle. (Id. at 277 (RT 563).) When petitioner returned with a board and tried to get his bicycle, Mr. Leming attacked with the knife and petitioner hit back. (Id. at 278 (RT 564).) Petitioner testified, "I had the right to self-defense, but I do also have a right to get my bike." (Id. at 292 (RT 578).)

The instruction at issue does not involve a right to use force in order to gain access to property unless the force was also used "to protect that property from imminent harm." See CALCRIM 3476; Bagley, 2017 WL 527477, at *4. Petitioner's consistent testimony that he wanted to get his bicycle, but was prevented, does not reflect an actual or perceived risk of "imminent harm" to the bicycle. Petitioner's reference to defense of property against harm and theft in his closing argument[2] was, therefore, unsupported by trial evidence.

Petitioner does not meet his burden of showing the state court findings of fact were unreasonable. See Hibbler, 693 F.3d at 1146-47. Although petitioner argued defense of property in his closing argument, he did not testify as to any belief that he needed to defend or protect his bicycle. He did not testify as to any belief of a risk of imminent harm to his bicycle. Moreover,

---

[2] Petitioner argued the State "did not prove beyond a reasonable doubt that when I hit Wes Leming with the board that I did not believe that it was a necessity to defense myself against my property, against harm, theft and – and great bodily injury to myself. (ECF No. 10-5 at 75 (RT 651).)

14

there was no evidence of an actual threat to the bicycle. The state court reasonably determined there was no evidence of an actual or perceived risk of "imminent harm" to his property.

Without any trial evidence of a threat to the bicycle, or petitioner's reasonable belief of a risk of imminent harm to his bicycle, defense of property was not the heart of petitioner's defense. The heart of petitioner's defense was self-defense because he testified he swung the board in response to Mr. Leming's knife attack. The trial court instructed the jury on self-defense. (ECF No. 10-1 at 248 (RT 239).) Under these circumstances, petitioner's trial was not rendered fundamentally unfair in violation of due process by the trial court's omission of sua sponte instruction on defense of property.

Petitioner argues omission of instruction on defense of property improperly relieved the prosecution of its burden to prove all elements of assault with a deadly weapon beyond a reasonable doubt. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." See In re Winship, 397 U.S. 359, 364 (1970); see also U.S. v. Gaudin, 515 U.S. 506, 519 (1995) (holding "the Fifth and Sixth Amendments require conviction by a jury of all elements of the crime").

Omission of the defense of property instruction, petitioner asserts, deprived him of a jury trial on the "element" that he was not defending his property. (ECF No. 1 at 44.) This argument, too, is foreclosed by the reasonable determination that there was no evidence of an actual or perceived risk of "imminent harm" to the bicycle.

Given that no constitutional error occurred, it is not necessary to evaluate whether any alleged error would have been harmless. Nevertheless, it is clear that omission of the instruction did not have "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637. The jury rejected petitioner's argument that he acted lawfully in defense of himself when he swung the board at Mr. Leming. There is no reason to suspect the jury would have found, in the alternative, he acted lawfully in defense of his bicycle.

////

////

## CONCLUSION

Petitioner fails to meet the standards set out in 28 U.S.C. § 2254(d) by showing the state court rejection of his claim was contrary to or an unreasonable application of clearly established law as determined by the Supreme Court, or resulted in a decision based on an unreasonable determination of the facts. Accordingly, the request for an evidentiary hearing need not be reached. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The Clerk of the Court is ORDERED to assign a district judge to this case.

Further, IT IS RECOMMENDED the petition for a writ of habeas corpus (ECF No. 1) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 30 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within 7 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: May 21, 2021

DLB7
bagl2213.fr

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE